**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**OHIO OIL GATHERING**
**CORPORATION III, et al.,**

           **Plaintiffs,**                **Case No. 2:09-cv-782**
                                      **JUDGE GREGORY L. FROST**
     **v.**                       **Magistrate Judge Mark R. Abel**

**WELDING, INC.,**

           **Defendant.**

**OPINION AND ORDER**

This matter is before the Court for consideration of the following filings:

(1) a motion *in limine* to preclude argument concerning the effect of comparative fault filed by Plaintiffs Ace American Insurance Company ("ACE") and Ohio Oil Gathering Corporation III ("Ohio Oil") (Doc. # 44), a memorandum in opposition filed by Defendant, Welding, Inc. (Doc. # 67), and a reply memorandum filed by Plaintiffs (Doc. # 70);

(2) Plaintiffs' motion *in limine* to preclude certain testimony by Jason LeMasters (Doc. # 45), Defendant's memorandum in opposition (Doc. # 66), and Plaintiffs' reply memorandum (Doc. # 71);

(3)  Plaintiffs' motion *in limine* to preclude certain testimony by William Simcox filed by Plaintiffs (Doc. # 46), Defendant's memorandum in opposition (Doc. # 64), and Plaintiffs' reply memorandum (Doc. # 72);

(4) Plaintiffs' motion *in limine* to preclude opinion testimony by any witness not properly disclosed (Doc. # 47), Defendant's memorandum in opposition (Doc. # 63), and Plaintiffs' reply memorandum (Doc. # 73);

1

(5) Plaintiffs' motion *in limine* to preclude evidence that Defendant has continued to perform work for Ohio Oil (Doc. # 48), Defendant's memorandum in opposition (Doc. # 65), and Plaintiffs' reply memorandum (Doc. # 74);

(6) Plaintiffs' motion *in limine* to preclude evidence regarding the denial of any portion of the insurance claim made by Ohio Oil (Doc. # 49), Plaintiffs' motion *in limine* to preclude evidence of prior settlement negotiations (Doc. # 50), Plaintiff's motion *in limine* to bar witnesses from the courtroom (Doc. # 51), and Defendant's combined response memorandum (Doc. # 61);

(7) Plaintiffs' motion *in limine* to preclude evidence that Joshua Melton filed a lawsuit against Ohio Oil (Doc. # 52), Defendant's memorandum in opposition (Doc. # 62), and Plaintiffs' reply memorandum (Doc. # 75);

(8) Defendant's motion *in limine* to preclude Plaintiffs from presenting contract or quasi contract theories of recovery (Doc. # 53), Plaintiffs' memorandum in opposition (Doc. # 56), and Defendant's reply memorandum (Doc. # 60); and

(9) Defendant's motion *in limine* to preclude Michael Wright from providing testimony related to industry standards or any standard of care applicable to Defendant (Doc. # 54), Plaintiffs' memorandum in opposition (Doc. # 57), and Defendant's reply memorandum (Doc. # 59).

Following a discussion of a threshold issues regarding the briefing, this Court shall address each motion in turn.

### I.  Violations of Court Orders

On November 30, 2009, this Court filed a Notice of Final Pretrial and Trial.  (Doc. # 18.)
That document provided that, in addition to the rules and procedures described in that notice, the
parties should refer to "[a]dditional rules and trial procedures" available "from the Court's
website at **www.ohsd.uscourts.gov**."  (Doc. # 18, at 4.)  The undersigned judicial officer has a
standing order, available from the Clerk and posted on that website, that provides that "[m]otions
in limine . . . shall be filed three weeks prior to the final pretrial conference.  Responses to
motions in limine shall be filed two weeks prior to the final pretrial conference"  Trial Procedure
for Civil Jury Trial, at 6.  Because the final pretrial conference date in this case was originally
December 9, 2010 (Doc. # 17; Doc. # 18, at 1), the parties had to file any motions *in limine* no
later than November 18, 2010.  The parties then had to file any responses to the motions *in
limine* by the extended deadline of November 26, 2010 (because November 25 was a holiday).

The parties filed all of the pending motions *in limine* in accordance with the Court's
standing order.  Plaintiffs then filed responses within the established deadline.  (Docs. # 56, 57.)
Defendant, however, inexplicably proceeded to file responses to Plaintiffs' motions on
December 3, 2010, well outside the filing deadline.  (Docs. # 61, 62, 63, 64, 65, 66, 67.)
Defendant also proceeded to file reply memoranda in support of its motions *in limine*, despite the
fact that this Court's standing order does not contemplate such filings.  (Docs. # 59, 60.)
Additionally, Defendant failed to obtain leave of Court prior to filing the untimely responsive
memoranda and the precluded reply memoranda.  Joining in such disregard for this Court's
standing order, Plaintiffs then filed reply memoranda on December 9, 2010, without having
obtained leave for doing so.  (Docs. # 70, 71, 72, 73, 74, 75.)

In such instances of inexcusably sloppy or poor practice, this Court has considered action such as striking the untimely or impermissible filings or even sanctioning counsel. *See Hinkle v. Norfolk S. Ry. Co.*, No. 2:05-cv-574, 2007 WL 496365, at *1 (S.D. Ohio Feb. 12, 2007).  In addition to performing work for their clients that should not have been done, the parties have placed additional work upon this Court.  Defendant's untimely responses resulted in this Court having to revisit and in some cases revise substantially this Opinion and Order, and now Plaintiffs are filing multiple documents the day before the final pretrial conference is to take place.

It is this Court's preference and general practice to file its motion *in limine* orders the week prior to the final pretrial conference.  The parties are apparently doing everything they can to frustrate this goal by disregarding the Court's standing order.  Such performance by counsel does not bode well for a smooth trial.  Rather than strike all the offending documents or sanction all of the counsel involved, however, this Court will do three things.  First, the Court accepts for consideration Defendant's untimely response memoranda.  (Docs. # 61, 62, 63, 64, 65, 66, 67.)  Second, this Court will not consider either side's improper reply memoranda, which the Court strikes.  (Docs. # 59, 60, 70, 71, 72, 73, 74, 75.)  Third, the Court "admonishes . . . counsel for [their] abject failure to comply with all applicable orders of this Court and advises counsel to meet [their] responsibilities in the future."  *Hinkle*, 2007 WL 496365, at *1.

## II.  Motions *in limine*

### A.  Standard Involved

A motion *in limine* is a pre-trial mechanism by which this Court can give the parties advance notice of the evidence upon which they may or may not rely to prove their theories of

4

the case at trial.  To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds.  *Cf. Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Any ruling on a motion *in limine*, however, is "no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court, and the district court may change its ruling where sufficient facts have developed that warrant the change."  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).  Therefore, this Court will entertain objections on individual proffers of evidence as they arise at trial, even though the proffered evidence falls within the scope of a denied motion *in limine*.  *See id.*; *see also United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (citing *Luce*, 469 U.S. at 41)).

**B.  Analysis**

   ***1.  Comparative fault (Doc. # 44) & Contract or quasi contract theories of recovery (Doc. # 53)***

   Arguing the inapplicability of comparative fault to contract claims under Ohio law, Plaintiffs assert in their first motion *in limine* that this Court should preclude Defendant from presenting argument concerning comparative fault related to the breach of contract claim.  In response, Defendant concedes that, "as a general proposition" under Ohio law, "contributory or comparative negligence is not a valid defense for a breach of contract."  (Doc. # 67, at 2.)  This is a correct statement.  Consequently, the Court precludes Defendant from arguing that comparative fault is a defense to the contract claim.

   Defendant also asserts, however, that Ohio law does not preclude Defendant from arguing that a failure by Ohio Oil to provide Defendant's employees with a safe work environment or to advise Defendant's employees of hazards do not constitute breaches of

contractually implied duties by Ohio Oil.  It is somewhat unclear to this Court exactly what Defendant is arguing.  Defendant has not asserted a counterclaim for breach of contract and in fact asserts that no contract exists.  Additionally, Defendant is arguing that there simply can be no breach of contract claim here, only a tort claim.  But it appears that, in the event the contract claim proceeds to trial, Defendant seeks to argue simply material breaches by Ohio Oil as opposed to application of the comparative fault doctrine.  Given the potential relevance of such an argument, the Court finds Plaintiffs' motion not preclusive of such an argument.

As an additional argument against Plaintiffs' motion, Defendant also directs this Court via incorporation to its own first motion *in limine*, which seeks to preclude Plaintiffs from presenting their breach of contract claim to the jury.  Plaintiffs contest Defendant's motion on the grounds that they will present evidence that Ohio Oil received a written warranty so as to fall within a breach of an express contract claim.  Defendant disputes the legal effect of the language upon which Plaintiffs rely.

Regardless of the substantive merits of the parties' arguments, there is a larger threshold issue that proves dispositive of the motion *in limine* at issue.  Defendant's motion is more a motion for judgment on the pleadings or for summary judgment on the second claim of the Complaint than it is a motion *in limine*.  The time for filing such dispositive motions has long closed, however, and Defendant cannot evade this Court's summary judgment deadline simply by captioning its dispositive motion in a creative manner.  *See Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 04-1880, 2007 WL 2908007, at *1 (W.D. Pa. Oct. 2, 2007) ("Motions *in limine* are inappropriate vehicles to seek a final determination with respect to a substantive cause of action, and should not be used as a substitute for a motion for summary judgment ."); *Natural*

*Res. Def. Council v. Rodgers* No. CIV-S-88-1658, 2005 WL 1388671, at *1 n.2 (E.D.Cal. June 9, 2005) ("Motions *in limine* address evidentiary questions and are inappropriate devices for resolving substantive issues." (also collecting authority supporting proposition)); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, No. 90 C 6933, 1996 WL 284940, at *4 (N.D. Ill. May 23, 1996) ("A motion *in limine* is not a substitute for a motion for summary judgment.").  Defendant cannot obtain a judgment on the second claim of the Complaint via a motion *in limine*.

The Court **GRANTS** Plaintiffs' motion (Doc. # 44), as qualified above, and **DENIES** Defendant's motion (Doc. # 53).

### 2. Jason LeMasters (Doc. # 45)

Plaintiffs argue that various opinion testimony offered by Defendant's expert, Jason LeMasters, falls outside his area of expertise and is therefore inadmissible under Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  LeMasters offers opinions critical of Ohio Oil's failure to provide Defendant with hazard information and for not having a comprehensive safety program.  He also specifically opined in deposition testimony that the circumstances in which other contractors were working at Ohio Oil's site indicated a failure to control fire hazards.  This latter testimony involves LeMasters' critique of the fact that a contractor was operating heavy machinery near Tank 118 when Defendant's employees arrived to perform their work.  As Plaintiffs point out, however, LeMasters has no chemistry background and has no reason to conclude that flammable vapors could have escaped from Tank 118 and fallen to ground level, rendering the operation of any heavy machinery near the tank risky.

The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had

superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923),

and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the

admissibility of expert testimony. *Daubert,* 509 U.S. at 597.  The relevant Federal Rule of

Evidence is Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Further, the Supreme Court has made clear that Rule 702 applies not only to

scientific testimony but also to other types of expert testimony based on technical or other

specialized knowledge.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold.  First, the Court must determine whether

the proffered testimony is reliable.  *See Daubert*, 509 U.S. at 590.  The reliability assessment

focuses on whether the reasoning or methodology underlying the testimony is scientifically

valid.  *Id.* The expert's testimony must be grounded in the methods and procedures of science

and must be more than unsupported speculation or subjective belief.  *Id.*  Thus, the proponent of

the testimony does not have the burden of proving that it is scientifically correct, but that by a

preponderance of the evidence, it is reliable.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744

(3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the

determination of whether an expert's methodology is reliable.  They are:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and

> publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94.  *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004).  The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability.  *Kumho Tire*, 526 U.S. at 150.  The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case.  *Id.* (quoting *Daubert*, 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004).  The particular factors will depend upon the unique circumstances of the expert testimony involved.  *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue.  *See Daubert*, 509 U.S. at 591-93.  This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial.  *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).  Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The United States Supreme Court and courts of appeals have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology.  *See, e.g.,*

9

*Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Guided by the foregoing concerns, this Court concludes that LeMasters' testimony regarding the operation of heavy machinery near Tank 118 is outside his area of expertise, not founded on a reliable methodology, or both. There is simply nothing before this Court that makes a persuasive case for LeMasters possessing the expertise or skill set to evaluate the

10

description of the site conditions and activities he reviewed and arrive at the conclusion he offers.  LeMasters explicitly assumes (without offering his own basis for doing so) that the potential presence of flammable vapors on top of the tank meant that such vapors could potentially be on the ground as well, presenting a dangerous situation given the use of a backhoe. LeMasters simply offers no scientific basis for this assumption, which serves to undercut this Court recognizing any sufficient methodology underlying his opinion.  The Court therefore finds the motion well taken in regard to this testimony.

Plaintiffs also argue in their motion that this Court should preclude LeMasters from criticizing their construction safety expert, Michael Wright.  They assert that LeMasters offered these criticisms not in his expert report, but for the first time at his subsequent deposition in contravention of Federal Rule of Civil Procedure 26(a)(2)(c).  Defendant argues in opposition that LeMasters' comments target Wright's deposition testimony and that Wright's deposition took place after LeMasters had prepared his report.  Defendant reasons that such critiques are common in litigation and that they do not "necessarily rise to the level of an expert opinion." (Doc. # 66, at 3.)  Additionally, Defendant posits that Plaintiffs cannot claim surprise or prejudice related to LeMasters' testimony when such testimony occurred over five months prior to trial.

Rule 26(a)(2)(A) requires the disclosure of a party's expert witness.  Rule 26(a)(2)(B) mandates that the disclosing party contemporaneously disclose an expert written report, which must contain a *complete* statement of the expert's opinions, the basis for such opinions, the information relied upon in forming the opinions, any summarizing or supporting exhibits, the expert's qualifications, the expert's publications from the preceding ten years, a list of all cases

11

in which the witness testified as an expert in the preceding four years, and the expert's compensation. Rule 26(a)(2)(C) sets forth default deadlines for these disclosures, but also specifically provides for stipulated changes or changes by the Court to these deadlines. Finally, Rule 26(a)(2)(D) and (e) impose an ongoing duty to supplement the expert report and opinions.

Assuming *arguendo* that Defendant had a duty to disclose or supplement that encompasses LeMasters' review of the Wright deposition contents, this Court concludes that Defendant's failure to do so is harmless. Plaintiffs had ample opportunity to depose LeMasters on his testimony and to obtain rebuttal evidence or experts as necessary. Moreover, Plaintiffs offer no explanation in their motion as to how they have been prejudiced, while Defendant offers a sufficient explanation as to why the purported error is ultimately harmless. The Court therefore finds this second aspect of Plaintiffs' motion not well taken.

This Court **GRANTS IN PART** and **DENIES IN PART** the motion as described above. (Doc. # 45.)

### 3. *William Simcox (Doc. # 46)*

Plaintiffs seek to exclude Defendant's expert, William Simcox, from testifying that the movement of the metal plate on top of Tank 118 caused the fire underlying this lawsuit on the ground that such an opinion lacks any factual basis. In so doing, Plaintiffs again invoke Federal Rule of Evidence 702 and the test set forth in *Daubert*. This Court concludes, however, that Plaintiffs' *Daubert* argument fails.

Simcox identifies three possible or likely causes for the Tank 118 fire, only one of which Plaintiffs challenge. They argue that the evidence does not support a theory that the steel plate was moving so that it could have generated a spark that led to the fire. Simcox himself qualifies

12

the probability of plate movement as the cause of the fire, but he indicates that he cannot rule this possibility out as a potential cause. Although a close call, this Court agrees with Defendant that Plaintiffs' concerns go to the weight rather than the admissibility of his Simcox's qualified plate movement opinion. There appears to be an evidentiary foundation, even if of limited strength, for Simcox' plate movement theory, which even he deems less likely than his other theories.

Plaintiffs also seek to preclude Simcox from testifying that Ohio Oil was negligent and at fault for the Tank 118 fire. Simcox indicated in his deposition that it was his personal opinion, not his expert opinion, that Ohio Oil was deficient in not providing hazard information and in not having adequate security at its facility. Defendant counters that Simcox will not employ the term "negligent" (and presumably no variation thereof) in his testimony. This representation effectively moots or concedes the "negligent" component of Plaintiffs' motion.

Less clearly dispositive of any aspect of the motion is Defendant's contention that Simcox can bootstrap his thoughts on Ohio Oil's safety practices and security measures into relevant testimony because they inform his opinion as to the causative factors underlying the fire. If the Court understands Defendant's argument, Simcox would testify that–in his opinion drawn from his experience and not as a result of his particularized expertise–Ohio Oil exhibited a disconcerting laxness in regard to safety and security and that this corporate ennui produced an environment in which factors that could cause the fire likely flourished. This is perhaps stacking at least one too many inferences to reach an argument for the admissibility of testimony well outside the province of a fire investigator. The Court will entertain discussion on this issue at the final pretrial conference if Defendant seeks to shore up its rationale for admission, but given

13

the filings, this Court finds the motion well taken in regard to Simcox testifying as to the appropriateness of the safety and security practices he encountered at Ohio Oil.

The Court **DENIES** that portion of the motion related to the steel plate movement theory, **DENIES AS MOOT** that portion of the motion targeting Simcox testifying in terms of negligence, and **GRANTS** that portion of the motion seeking preclusion of testimony as to Simcox's opinion of Ohio Oil's safety and security practices.  (Doc. # 46.)

### 4. *Opinion testimony by improperly disclosed witnesses (Doc. # 47)*

Plaintiffs move to the introduction of opinion testimony by any witness who Defendant did not properly disclose under Federal Rule of Civil Procedure 26(a)(2).  Plaintiffs do not indicate whether any witness or testimony actually falls within this category.  In response, Defendant asserts its intention to comply with all applicable procedural and evidentiary rules, but asserts that law witnesses can provide opinion testimony that does not constitute expert testimony so as to invoke the disclosure obligations upon which Plaintiffs rely.  Defendant also does not point to any specific witness or testimony in its response that might engender debate with Plaintiffs.  Given that the parties appear to be engaging in a hypothetical discussion without pointing to any probable possibility of this issue arising at trial, the Court **DENIES** the motion. (Doc. # 47.)  The parties are of course bound by all applicable procedural and evidentiary rules and of course remain free to present arguments related to those rules should the perceived need for doing so arise during trial.

### 5. *Continued work performance (Doc. # 48)*

Plaintiffs ask in this motion for the Court to preclude Defendant from introducing evidence or argument that Defendant has continued to perform work for Ohio Oil since the April

14

2009 incident underlying this action.  They posit that such evidence is irrelevant and thus inadmissible and that even if such work were relevant, its prejudicial effect outweighs any probative value.  Defendant in turn argues that continued employment is relevant and therefore admissible because it speaks to whether Ohio Oil previously recognized, even if implicitly, some degree of responsibility for the fire prior the involvement of ACE.   The evidence can also inform to a limited degree the ultimate issue of whether Defendant is an unsafe contractor.

What constitutes relevant evidence is not a particularly onerous standard.  The evidence at issue here qualifies as "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added).  This Court recognizes that whether Ohio Oil has continued to employ a company that it accuses of negligent conduct is of some potential relevance given Plaintiffs' theory of the case and Defendant's defense.  Additionally, Plaintiffs can offer contrary evidence and argument to counter any inferences that may arise.  The potential probative value and the possibly mitigating effect of countering trial conduct by Plaintiffs outweigh any prejudice, rendering such prejudice neither unfair or confusing.  Plaintiffs have failed to direct this Court to any case law in which a court excluded similar evidence presented under similar circumstances.

The evidence at issue is of sufficient relevance under Rule 401 to be admissible pursuant to Rule 402, and contrary to Plaintiffs' assertions, any risk of unfair prejudice or risk of confusion does not substantially outweigh its substantial probative value under Rule 403.  This Court **DENIES** the motion.  (Doc. # 48.)

### 6.  *Insurance claim made by Ohio Oil (Doc. # 49)*

According to the relevant motion *in limine*, ACE previously paid a portion of Ohio Oil's insurance claim for loss related to the Tank 118 fire underlying this litigation. Those portions of the claim that ACE denied are not within the damages sought in the action. Plaintiffs ask this Court to prohibit Defendant from presenting any evidence or argument concerning any portion of Ohio Oil's insurance claim that ACE denied, including the adjustment process. In response, Defendant indicates that, given that it does not intend to elicit testimony or introduce evidence related to such issues, it does not oppose Plaintiffs' motion. The Court therefore **GRANTS** the motion. (Doc. # 49.)

### 7. *Prior settlement negotiations (Doc. # 50)*

Plaintiffs ask this Court to preclude any testimony, evidence, or argument regarding the parties' prior settlement negotiations. Defendant agrees with the mandated exclusion of such material and does not oppose the motion. The Court **GRANTS** the motion. (Doc. # 50.)

### 8. *Barring witnesses from the courtroom (Doc. # 51)*

Via a motion *in limine*, Plaintiffs seek an order barring all witnesses, except for corporate party representatives at counsel's tables, from the courtroom during the trial until after the witnesses have testified. Defendant does not oppose the motion except to the extent that it might encompass its experts. The Court **GRANTS** the motion in regard to all witnesses except for the Federal Rule of Evidence 615(2) corporate party representatives selected to sit at counsel table and any experts falling under Rule 615(3). (Doc. # 51.)

### 9. *Joshua Melton lawsuit (Doc. # 52)*

Plaintiff seek to prevent the introduction of any evidence that Melton, an employee of Defendant, previously filed a lawsuit against Ohio Oil related to injuries he sustained as a result

16

of the incident underlying the instant action.  Defendant indicates in its response that it does not intend to elicit any testimony or evidence regarding Melton's lawsuit unless circumstances at trial render the existence of the lawsuit relevant and material.  The Court therefore **DENIES** the motion as moot.  (Doc. # 52.)  The Court will discuss with the parties at the December 10, 2010 final pretrial conference Defendant's suggestion that all parties avoid questions to Melton that might make his lawsuit material to this action, as well as the suggestion that the Court instruct Melton to avoid the topic of his lawsuit in his trial testimony.  The Court favors both suggestions.

### 10.  *Michael Wright & standard of care (Doc. # 54)*

Defendant argues in its second motion *in limine* that this Court should preclude Plaintiffs' expert, Michael Wright, from testifying as to the specific industry practices or standard of care applicable to contractors such as Defendant.  In support of this request, Defendant argues that Wright has no experience, training, or qualifications regarding work of the sort involved in the April 2009 incident.  Plaintiffs counter by arguing that Wright can opine on this work because he is, as Defendant concedes, qualified to opine on general safety measures and practices, as well as OSHA requirements.

This Court's review of Wright's curriculum vitae preliminarily supports Plaintiffs' position.  It appears that Wright possesses the knowledge, skill, experience, training, or education to testify in the form of an opinion on at least general if not more specific applicable safety practices that may also constitute the standard of care employed in the industry.  Given that neither side in this case has addressed the specific of the probable testimony but has only addressed the general nature of the likely testimony in the briefing, this Court cannot say that

17

there is a basis to limit or preclude Wright's testimony at this stage. Defendant can assert more specific objections at trial targeting substantive testimony. Accordingly, the Court **DENIES** the motion. (Doc. # 54.)

### III. Conclusion

For the foregoing reasons, this Court **ORDERS** as follows:

(1) The Court **GRANTS** the motion constituting Doc. # 44, as qualified above;

(2) This Court **GRANTS IN PART** and **DENIES IN PART** the motion constituting Doc. # 45;

(3) The Court **DENIES** that portion of the motion constituting Doc. # 46 related to the steel plate movement theory, **DENIES AS MOOT** that portion of the motion targeting Simcox testifying in terms of negligence, and **GRANTS** that portion of the motion seeking preclusion of testimony as to Simcox's opinion of Ohio Oil's safety and security practices;

(4) This Court **DENIES** the motion constituting Doc. # 47;

(5) The Court **DENIES** the motion constituting Doc. # 48;

(6) This Court **GRANTS** the motion constituting Doc. # 49;

(7) The Court **GRANTS** the motion constituting Doc. # 50;

(8) This Court **GRANTS** the motion constituting Doc. # 51 in regard to all witnesses except for the Federal Rule of Evidence 615(2) corporate party representatives selected to sit at counsel table and any experts falling under Rule 615(3);

(9) The Court **DENIES AS MOOT** the motion constituting Doc. # 52;

(10) This Court **DENIES** the motion constituting Doc. # 53; and

(11) The Court **DENIES** the motion constituting Doc. # 54.

18

As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED**.

<u>     /s/ Gregory L. Frost     </u>
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE